## Case No. 15,309.

UNITED STATES v. HARRIES et al.

[2 Bond, 311.][1]

Circuit Court, S. D. Ohio.  Oct. Term, 1869.

INDICTMENT FOR VIOLATIONS OF INTERNAL REVENUE LAWS—FRAUDULENT REMOVAL OF SPIRITS —PRESUMPTIONS—ACCOMPLICES—WITNESSES.

1. In the trial of an indictment for the fraudulent removal of distilled spirits from the distillers' bonded warehouse, under section 45 of the internal revenue act of July 13, 1866 [14 Stat. 163], it is not necessary for the United States to prove that the warehouse, from which is is averred the spirits were removed, had been designated, or authorized as such, by an officer of the revenue department.

2. The court will take notice, judicially, that the statute requires every distiller to provide such a warehouse; and a jury may legally act on the presumption that the distiller had complied with the law, and has a warehouse as required by the statute.

3. In the case of a joint indictment against two or more for a statutory misdemeanor, those charged with the offense, though not personally present at the commission of the unlawful act specifically alleged, may be found guilty as principals in the second degree, if the evidence satisfies the jury they were cognizant of, and participants in, the fraud. In such a case, the law regards them as constructively present at the commission of the unlawful act.

4. The evidence proving the guilty complicity of the defendants, must relate to facts occurring before the commission of the criminal act; and, in the absence of such testimony, there can not be a verdict of guilty solely on proof of occurrences subsequent to the commission of the offense; but such evidence may be taken into consideration by the jury as explanatory of, or throwing light upon, the prior evidence.

5. An accomplice in a crime is not disqualified from being a witness; but his evidence is to be received with great caution; and, as a general rule, especially in crimes involving great moral turpitude, is to be wholly disregarded as

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

unworthy of credit, unless corroborated by credible testimony.

6. The willful false statement of a witness as to a fact material in the case, may be a ground for the rejection of his entire evidence, except such as is corroborated by credible evidence.

Warner M. Bateman, U. S. Dist. Atty.

H. L. Burnett and Robert Christy, for defendants.

LEAVITT, District Judge (charging jury). This case is an indictment against William Harries, J. R. Huston, H. P. Lane, J. R. Miner, and John Gallagher. Harries, Huston, and Lane are the only defendants now on trial, and your verdict will, therefore, decide the guilt or innocence of these three defendants. They are charged in three counts with a criminal violation of different provisions of the internal revenue laws. The first count charges the removal of ninety-four barrels of distilled spirits from the distillery of A. C. Campbell, and the rectifying distillery of H. P. Lane, with intent to defraud the United States, by evading the payment of the duty or tax imposed by law. The second count is substantially like the first, except that it alleges the fraudulent removal of the spirits to have been from the bonded warehouse of A. C. Campbell, instead of the distillery. The third count charges the unlawful removal of the spirits after sunset, and before sunrise, in violation of law. The first and second counts are based on section 45 of the act of July 13, 1866. Without detaining you to recite the entire section, which has been so often read in your hearing, it will be sufficient to call your attention to one clause, which is in these words: "And any person who shall remove, or who shall aid or abet in the removal of any distilled spirits from any warehouse, otherwise than is allowed by law, shall be liable to a fine of not more than $1,000, or imprisonment for not less than three, or more than twelve months."

As to the first count, it is conceded by the district attorney that there is no evidence tending to show there was any removal of spirits from the distillery of Campbell. And, as to that count, it is not to be taken into consideration by the jury. Their inquiry, therefore, as to the removal of spirits, will be limited to the second count, charging the unlawful removal to have been from the bonded warehouse of Campbell. And the points of inquiry for the jury on this count will be: First. Is the proof satisfactory to establish the fact of a removal? Second. Were the defendants now on trial connected with the unlawful removal charged? Third. Was the removal with intent to defraud the United States of the legal duty or tax imposed? To justify a verdict of guilty on the second count, the jury must find these inquiries in the affirmative. And, as to the first, the fact of removal from the bonded warehouse, I understand, is not controverted; nor is it denied that the duty or tax on

the spirits was not paid. And, just here, I may notice a proposition urged by the counsel for defendants, and on which the court is requested to instruct the jury, namely, that there can not be a verdict of guilty in this case without proof by the United States that the bonded warehouse named in the indictment, and from which it is alleged the spirits were unlawfully removed, was a bonded warehouse, sanctioned or authorized expressly by the proper officer of the government. But while it is undoubtedly necessary to a verdict of guilty that the allegation respecting the bonded warehouse should be proved, it is not necessary for the government to prove that it was selected or authorized as such by any direct official act. It appears clearly that the bonded warehouse of A. C. Campbell was known and recognized as such by these defendants. And the court and jury will take notice that the law in force at the time of this transaction, required every distiller of spirits to provide such a warehouse in connection with his distillery. And the jury may legally presume that Campbell had provided a warehouse, as he was required by law to do. I am not prepared, therefore, to withdraw this case from the consideration of the jury on the mere technical point made by counsel.

As indicated in the outset, it is not the purpose of the court to detain the jury by a recital of, or a reference to, the mass of testimony which has been introduced. It would be wearisome and unprofitable. It seems to be conceded by counsel, that the spirits in question were removed from the warehouse connected with Campbell's distillery, and were put on board a canal-boat; that it was taken down the canal from the distillery, through Dayton to Hamilton; that it was transferred to another canal-boat and brought back to Dayton, where it was unloaded and deposited at the rectifying establishment of the defendant Lane. The sole issue in the case is, therefore, whether there was fraud in the removal of the spirits in which these defendants participated; whether, in other words, there was an intent, of which they were apprised, by this management, to evade the payment of the duty. That the spirits found their way into the market, and were sold without the payment of any tax, is not disputed.

It is an important inquiry for the jury, whether, on the supposition, the fraud charged was perpetrated, these defendants, by the evidence, are so far connected with, and implicated in, the fraud as to require a verdict of guilty as against them. It is not proved or claimed that any of the defendants were personally present at the removal of the spirits from Campbell's warehouse. The jury will doubtless remember the circumstances connected with this removal, and the persons present and aiding in it. As I have remarked, there is no proof that the defendants, or any of them, were of the num-

ber. It is, however, urged most earnestly, by the counsel for the United States, that the defendants were cognizant of the fraud, and so connected with it, that they are legally guilty of the offense charged in the indictment, under section 45 of the statute to which I have before referred.

These defendants are jointly indicted. All or any one of them, if legally implicated in the fraud charged, may be found guilty. And if the jury find from the evidence that, although they were not personally present at the unlawful removal of the spirits, they were aware of the removal, and in any way aided or abetted such removal by any concert or arrangement for that purpose, with the intent to evade the tax, they may be held legally guilty as charged in this indictment. The main facts urged by counsel as justifying the conclusion that they are legally implicated in the fraud, are that they, or some of them, were the owners of, or interested in, the spirits in question, and had a direct interest in evading the payment of the tax; and that they, or some of them, had an agency in, or took part in, the means by which the spirits were to be fraudulently removed, as by hiring the canal-boat for the purpose, giving orders or directions as to the removal, and other acts, to which I will not specially advert. It will be for the jury to decide whether, from the evidence, the defendants, or any of them, are fairly chargeable with complicity in the alleged fraud.

The offense charged in this indictment is not in law a felony, but a misdemeanor. And it is well settled, as a legal principle, that in misdemeanors, all are principals in the first or second degree. Those guilty in the first degree are those personally present at the commission of the offense. Those guilty as principals in the second degree are such as are not personally present, but who are so connected with the offense charged, that, in the eye of the law, they are constructively present, and therefore legally guilty of the act. In this view of the law, it will be competent for the jury, if the proof warrants the conclusion of guilt, to find a verdict against these defendants, as principals in the second degree. But the court charge that the evidence of the guilty complicity of these defendants must be based on the facts proved, as occurring prior to the commission of the offense charged. In other words, unless there is some evidence proving the connection of the defendants with the criminal acts charged before the commission of the offense, there can not be a verdict of guilty upon proof of subsequent acts. If the evidence in this case was solely of facts occurring after the removal of the spirits, though it might establish the fact of prior knowledge that the removal was to be accomplished, or their approval of the removal when effected, the defendants could not be found guilty under this indictment. But in connection with proofs of the complicity of the defendants in the

fraud, prior to its actual commission, the jury may properly consider subsequent facts in evidence, giving character to, or explanatory of, the prior facts proved.

And here it becomes my duty to state to the jury my views as to the weight and effect to be given to the testimony of Huffman, a witness introduced by the United States against these defendants. The jury will probably, have no hesitancy in concluding that the charge of fraud as against some, if not all of these defendants, is clearly made out, if they credit the testimony of Huffman. It is strenuously insisted, however, by the district attorney, that independent of the evidence of Huffman, there is sufficient to warrant a verdict of guilty against these defendants. It is claimed, also, by the government, if the jury should have doubts as to the sufficiency of the proof, excluding his testimony, they will be warranted in giving it credit, and can not do otherwise than find a verdict of guilty. In this aspect of the case, it may, therefore, be important to call the attention of the jury to the law bearing on the question of the credibility of Huffman's evidence. He is, by his own admission, a participant in the fraud for which these defendants are indicted. He was interested in the distilled spirits, and had knowledge of the fraud by which they were to be sold without payment of the legal tax. And he proves conclusively that Harries and Huston and Lane were apprised of, and aided in, the illicit removal of the spirits for a fraudulent purpose. But the counsel for the defendants urge that the jury must wholly ignore Huffman's testimony, for the reason that he was an accomplice in the crime charged, and, by law, is not entitled to credit as a witness.

I shall very briefly state my views of the law on this point. There can be no question, that Huffman, as a witness in this case, is before the court and jury under circumstances, which, in the estimation of the law, are suited to impair his credit. He is in the position of an accomplice, that is, one guilty of the crime charged, and his guilt is established by his own admission. It appears he had been indicted for his participation in frauds on the revenue. And while the indictment was pending, by direction of the commissioner of internal revenue, upon his making a full disclosure of his knowledge of frauds on the government in the vicinity of his residence, he was assured he would be protected from punishment for his part in those frauds. In felonies—crimes involving the deepest hue of depravity and moral turpitude—the testimony of an accomplice is more open to impeachment than in mere misdemeanors, or offenses of a less revolting character. In the former class of crimes, a jury ought, in no case, to convict on the uncorroborated evidence of an accomplice. There may be some rare exceptions to this rule, but as a general proposition it is well founded. The case before the jury, as already remarked, is an in-

dictment for a misdemeanor. to which the rule referred to. does not apply with the same force. In the case of a felony or a misdemeanor, before conviction, an accomplice is not disqualified from being a witness. but in either case, indeed in all cases, his testimony is to be received with great caution. And unless corroborated, or there are such circumstances in the case, as to relieve the witness from suspicion, and induce a jury to give him credit, it is the safer course to reject his testimony. The law is jealous of its own purity, and will not lend its sanction or countenance to anything implying moral turpitude. It will not be blind to the taint of crime in a witness, who is himself guilty, and who seeks by his testimony to implicate others in his admitted guilt.

But if an accomplice is used as a witness, and his testimony in its material parts is corroborated by other credible witnesses. there is, of course, no reason why it should not be received as truthful. And as applicable to the testimony of Huffman, if the jury believe he is supported in his statements by other witnesses, the jury will give them full credit. The credit of this witness is also impeached by the counsel for the defendants, on the ground that his evidence given before you is contradictory. and that the evidence of other witnesses directly impugns and falsifies his testimony. It will be for the jury to say whether these objections to Huffman's evidence have any just foundation. . If a witness in testifying contradicts himself in any material statement, it will impair his credit with a jury. Or, if a witness as to a material fact is proved to have uttered a deliberate falsehood, it may justify a jury in rejecting all his testimony as false. The rule of law is. that a witness who willfully falsifies as to one fact stated by him, may have been false in every other statement. But I have detained the jury too long in the consideration of the question of credibility. It is a question. of which the jury are the sole judges. and to them it is referred. I have set forth merely some general principles of law for their guidance. in the exercise of their judgment on the question.

I have only now to remind the jury that the case submitted to them is one of great interest. both to the government and to the defendants. If they are guilty of the offense charged. it is important that the law should be enforced. and the rights of the public protected. If they are not guilty. they have a right to a verdict which shall relieve their persons, their property. and their reputations from all the effects of the pending charge. I commend the case to the deliberate consideration of the jury. reminding them that though whisky frauds, as they are termed, have been numerous in our country, almost beyond the power of computation, and although the government has been defrauded of many millions by their commission, yet judicial cases involving those frauds, are to be disposed of according to the inflexible principles of law, fairly and justly applied to the legal proofs in each individual case.

I have not deemed it important to direct your attention specially to the third count in the indictment. That count charges the removal of the spirits in the night-time, or between sunsetting and sunrising. in violation of law. If the jury find the defendant guilty of complicity in the fraud charged in the second count. it will not be necessary for them to inquire as to the charge in the third count. This being a criminal prosecution, there could not be a conviction on the third count, without proof of a fraudulent intent; and if such intent appears to the satisfaction of the jury, they may base a verdict of guilty on the second count, taking care to find the defendants not guilty on the first and third counts. It is hardly necessary to remind the jury, that if they find a part only of the defendants on trial are guilty. they may find a verdict of not guilty as to such as are not implicated in the fraud charged.

The jury after being out several hours reported their inability to agree on a verdict, and were discharged by the court.